IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSENDERLO KERLEY, INC., | No. C 11-04100 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS OR-CAL'S FIFTH AND SIXTH COUNTERCLAIMS AND STRIKING OR-CAL'S SIXTH, SEVENTH AND EIGHTH AFFIRMATIVE DEFENSES** |
| OR-CAL, INC, | |
| Defendant. / | |

**INTRODUCTION**

In this patent infringement action, plaintiff moves to dismiss and/or strike several of defendant's counterclaims and affirmative defenses. For the foregoing reasons, plaintiff's motion is **GRANTED.**

**STATEMENT**

Plaintiff Tessenderlo Kerley, Inc. (TKI) and defendant OR-Cal, Inc. are competing manufacturers of sun protectants for crops. The asserted patents are Unites States Patent Numbers 6,110,867 and 6,464,995, both of which claim methods for protecting crops by applying particulate materials including kaolin or calcium carbonate to the crop's surface. The accused products, distributed under the names "Mask" and/or "Diffusion," are "a flowable micronized dispersion of calcium carbonate" used to protect crops against sunburn and heat stress (Ans. ¶ 20).

Defendant answered the complaint, denying infringement and alleging eight affirmative defenses and six counterclaims. Plaintiff now moves to dismiss and/or strike defendant's fifth and sixth counterclaims for declaratory judgment of unenforceability of the '867 and '995 patents due to prosecution history estoppel, patent misuse, and inequitable conduct. Defendant does not oppose the motion to strike prosecution history estoppel and patent misuse from defendant's fifth and sixth counterclaims (Opp. 1 n. 1). Plaintiff also moves to dismiss and/or strike defendant's sixth defense for failure to state a claim, seventh defense of inequitable conduct and eighth defense of patent misuse. Defendant does not oppose the motion to strike its sixth affirmative defense for failure to state a claim. Accordingly, at issue here are only defendant's inequitable conduct counterclaims and its affirmative defense for patent misuse.[1]

The '867 patent issued in August 2000 and relates to (Compl. Exh. 1 at 4–5):

> [A] method for enhancing the photosynthesis of horticultural crops which involves treating the surface of said horticultural crop with an effective amount of one or more highly reflective particulate materials . . .
>
> The effects of enhanced photosynthesis are typically observed by increased yields/productivity, e.g., increased fruit size or production . . . improved color, increased soluble solids, e.g., sugar, acidity, etc., and reduced plant temperature.

Among the particulate materials designated as "useful for the purposes of [the] invention" are calcium carbonate and kaolin. The '867 patent was the subject of reexamination by third-party request in June 2003. A reexamination certificate issued, amending several claims (*id.* at 13) (additions italicized):

> A method for enhancing photosynthesis of *a* horticultural crop *by increasing carbon dioxide assimilation of said horticultural crop* . . .

The '995 patent issued in October 2002 and relates to (*id*. Exh. 2 at 10):

> [H]orticultural substrates where the surface of said substrates where the surface of said substrates is coated with a particulate membrane and to methods of pest control and enhanced horticultural effects by forming said membrane on the surface of the horticultural substrate . . . .

---

[1] While defendant does not oppose plaintiff's motion to strike its counterclaims for patent misuse, it *does* oppose plaintiff's motion to dismiss and/or strike its affirmative defense for patent misuse (Opp. 1).

2

Again, among the materials designated as "useful for the purposes of [the] invention" are calcium carbonate and kaolin.

Defendant alleges that the '867 and '995 patents are unenforceable due to inequitable conduct by "at least David Michael Glenn, a named inventor of both patents." According to defendant, Inventor Glenn withheld his own study showing that calcium carbonate did not increase carbon assimilation, as claimed. In other words, defendants allege "the inventor's studies demonstrate that the patentees did not actually invent everything claimed in either of the patents-in-suit" (Opp. 1).

Defendant's answer alleges the following: Inventor Glenn published a paper entitled "Particle Films Affect Carbon Assimilation and Yield in 'Empire' Apple," concluding that calcium carbonate had "none of the positive effects" of kaolin and stating specifically that "calcium carbonate does not demonstrate the potential to improve plant productivity or quality by reducing heat stress . . . ." The Glenn article was received for publication in August 2002 and published in 2003, during the reexamination of the '867 patent and while the '995 patent was pending. Because the application of calcium carbonate to crops had drastically different effects than kaolin and lacked the beneficial effects claimed by the patents, the Glenn article was allegedly "material to the reexamination of the '867 patent and the application that issued as the '995 patent." Inventor Glenn did not disclose the article or his knowledge of the differences in effectiveness between kaolin and calcium carbonate to the examiner (Ans. ¶¶ 39–45).

Defendant alleges the reexamination certificate for the '867 patent and the application for the '995 patent would not have issued but for Inventor Glenn's failure to disclose the material information contained in his article. Defendant further alleges "Glenn deliberately withheld this information with a specific intent to deceive the []PTO" (Ans. ¶¶ 46–47).

**ANALYSIS**

**1.    OR-CAL'S INEQUITABLE CONDUCT ALLEGATIONS.**

A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint. To survive a motion

to dismiss, a counterclaim must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, (2009).

Whether inequitable conduct had been adequately pled is a question of Federal Circuit law, because it "pertains to or is unique to patent law." In *Therasense*, the Federal Circuit heightened the standards for inequitable conduct in response to its finding that "the inequitable conduct doctrine has plagued not only the courts but also the entire patent system." A party alleging inequitable conduct must now show "but-for" materiality and that the intent to deceive is "the single most reasonable inference able to be drawn from the evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011). *Therasense* did not address whether a more stringent standard should now be applied at the pleading stage.

Nevertheless, the parties agree that the applicable pleading standard is set forth in *Exergen v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). Under FRCP 9(b), a claim of inequitable conduct must be pled with particularity. A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy FRCP 9(b). The specific reference allegedly known to the applicant must be identified and the circumstances of the fraud must be pleaded in detail — this means the "who what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1326–27.

FRCP 9(b) also states that "malice, intent, knowledge, and other conditions of mind or a person may be alleged generally." Although intent may be averred generally, a pleading of inequitable conduct must include sufficient facts from which a court can "reasonably infer that a specific individual" had the relevant conditions of mind. "A reasonable inference is one that is plausible and flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329. The mental state required to show inequitable conduct in the context of an omission include: (1) knowledge of the withheld item; (2) knowledge of the item's materiality; and (3) a conscious decision not to disclose the item in order to deceive the PTO. *Therasense*, 649 F.3d at 1292.

In *Exergen*, the defendant alleged inequitable conduct by "Exergen, its agents and/or attorneys during the prosecution of the application." The defendant's allegations included failure to disclose prior art references of which the plaintiff was allegedly aware. In addition, the plaintiff allegedly made arguments before the PTO which were directly contradicted by statements on its own website. On appeal, the Federal Circuit identified three fatal flaws in the defendants' pleading: (1) it failed to name the specific individual associated with the filing or prosecution of the application at issue (the "who" information); (2) it failed to identify to which claims, and which limitations in those claims, the withheld references were relevant (the "what and where" of the material omissions); and (3) it did not identify which claim limitations or combination thereof were supposedly absent from the information of record ("why" the withheld information was material and not cumulative and "how" an examiner would have used this information). *Exergen*, 575 F.3d at 1329. The *Exergen* court found, in addition to the factual deficiencies, that the facts alleged did not give rise to a reasonable inference of scienter. "The pleading . . . provide[d] no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the [] patent, knew of the specific information in the [prior art references] that was alleged to be material to the claims of the [patent at issue]." *Id*. at 1330.

While defendant has sufficiently pleaded the "when" and "who" of its inequitable conduct claims, the "what," "where," "why" and "how" are not alleged in defendant's pleading with the requisite specificity. Defendant identifies a specific individual, namely Inventor Glenn, who had a duty of disclosure before the PTO. Defendant further identifies Inventor Glenn's specific knowledge of the allegedly material information — Inventor Glenn, himself, allegedly published the paper in question during the pendency of the prosecution. This is enough to satisfy the "when" and "who" components under *Exergen*.

On the other hand, the sparse factual allegations contained in defendants' pleading regarding materiality of the Glenn article to the patents at issue cannot survive under the *Exergen* standard. Defendant merely states that "the fact that the application to crops of calcium carbonate had drastically and materially different effects than kaolin, and lacked the beneficial

5

effects of kaolin described in the patents, was material . . ." (Ans. ¶ 44). But defendant does not identify how or to which claims this fact was material, as required under *Exergen*. Moreover, defendant makes a conclusory assertion of but-for materiality, failing to identify on what basis the examiner would have rejected the '867 and '995 patents as written (*id*. ¶ 46). Defendant's allegation that the PTO examiner would have concluded that the patents were overbroad and not fully enabled is stated for the first time in its opposition (Opp. 12). The same is true for its allegation that the Glenn article was not cumulative of information disclosed in the patents-in-suit. In fact, many of the missing factual links in its pleading are contained in defendant's opposition brief. A party cannot, however, supplement its pleadings by way of its motion papers.

Defendant states only that Inventor Glenn "deliberately withheld this information with a specific intent to deceive the PTO" (Ans. ¶ 47). The facts as alleged in defendant's answer do not explain why this is a reasonable inference for the Court to make. In its opposition, defendant identifies additional facts that may support such an inference.[2] But, again, these are not contained in the pleading.

In its opposition, defendant argues that plaintiff "cannot seriously contend it does not know what claims defendant is referring to — i.e. all of the claims asserted by [plaintiff] in this case" (Opp. 11). The pleading standard for inequitable conduct requires more than that a plaintiff *should* know to what defendant refers. To satisfy *Exergen*, the pleading, itself, must specifically identify to which claims, and which limitations in those claims, the withheld references are relevant.

Having heard arguments at the March 29 hearing on the content of the Glenn article, it is impossible for the Court on the existing record to decide whether the PTO would or would not have granted the '867 and '995 patents but-for Inventor Glenn's non-disclosure. On that issue,

---

[2] For example, defendant alleges in its opposition that Inventor Glenn, himself "specifically discussed with the Examiner how the prior art did not increase carbon dioxide assimilation" (Opp. 17). Defendant also states for the first time in its opposition that Inventor Glenn's presentation during that interview resulted in the Examiner's suggestion that the patentees amend the claims of the '867 patent to require "increasing CO2 uptake" in order to overcome the prior art (*id*. at 5).

6

the record would have to be further developed as to the Glenn article's impact on the invention. It seems plausible at this stage that inequitable conduct can be adequately pled.

Though it is a close call, this order finds defendant's pleading of inequitable conduct fails to meet the heightened standard under *Exergen*. Based on defendant's opposition brief and arguments made at the hearing, however, the Court is confident that defendant will be able to sufficiently reallege its inequitable conduct allegations to satisfy the *Exergen* standard. The defects defendant should seek to cure by amendment are: (1) failure to identify which claims, and which limitations in those claims, of the asserted patents the withheld references were relevant; (2) failure to identify which claim limitations or combination thereof were supposedly absent from the information of record; and (3) failure to include sufficient facts to support a reasonable inference of scienter. Again, many of the factual allegations missing from defendant's pleading are contained in its opposition brief. Defendant's fifth and sixth counterclaims for invalidity due to inequitable conduct are accordingly **DISMISSED WITHOUT PREJUDICE.** Defendant's seventh affirmative defense for inequitable conduct is **STRICKEN WITHOUT PREJUDICE.**

### 2. OR-CAL'S PATENT MISUSE ALLEGATIONS.

Defendant's eighth affirmative defense alleges that the '867 and '995 patents are unenforceable because "TKI has engaged in patent misuse — attempting to expand the scope of its patent grant with anticompetitive effect by prosecuting claims of infringement of the patents-in-suit in this litigation in bad faith" (Ans. ¶ 48). Defendant alleges:

> TKI has engaged in patent misuse, either standing alone or in combination with other conduct, by failing to disclose material information to the []PTO in order to stretch overbroad patent claims to read on calcium carbonate products.

(*Id*. ¶¶ 49–50).

Defendant's patent misuse defense appears to rest entirely on its inequitable conduct allegations. Because this order has already found those allegations to be insufficient as pled, its patent misuse defense must also be deemed insufficient. Defendant's eighth affirmative defense for patent misuse is accordingly **STRICKEN WITHOUT PREJUDICE.**

7

**CONCLUSION**

For the foregoing reasons, defendant's fifth and sixth counterclaims for inequitable conduct are **DISMISSED WITHOUT PREJUDICE.** Defendant's seventh and eighth affirmative defenses for inequitable conduct and patent misuse are **STRICKEN WITHOUT PREJUDICE.** Because defendant does not oppose, its sixth affirmative defense and its counterclaims based on prosecution history estoppel and patent misuse are also **STRICKEN.** Defendant may file a motion for leave to amend its counterclaims and affirmative defenses within **TWENTY-ONE CALENDAR DAYS** from the date of this order, noticed on the normal 35-day track.

**IT IS SO ORDERED.**

Dated: March 29, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE