IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSENDERLO KERLEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> OR-CAL, INC, <br><br> Defendant. | No. C 11-04100 WHA <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL AMENDED INFRINGEMENT CONTENTIONS AND GRANTING IN PART MOTION TO EXTEND TIME TO SERVE INVALIDITY CONTENTIONS AND VACATING HEARING** |

## INTRODUCTION

In this patent infringement action, defendant moves to compel infringement contentions that comply with Patent Local Rule 3-1. Defendant also moves to extend the time to serve its invalidity contentions pursuant to Patent Local Rules 3-3 and 3-4. For the following reasons, defendant's motion to compel infringement contentions that comply with Rule 3-1 is **GRANTED** and defendant's motion to extend the time to serve its invalidity contentions is **GRANTED IN PART.**

## STATEMENT

Plaintiff Tessenderlo Kerley, Inc. (TKI) and defendant OR-Cal, Inc. are competing manufacturers of sun protectants for crops. The asserted patents are United States Patent Numbers 6,110,867 and 6,464,995, both of which claim methods for protecting crops by applying particulate materials such as kaolin or calcium carbonate to the crop's surface.

Plaintiff alleges that products distributed under the names *Mask* or *Diffusion* are crop protectants containing calcium carbonate and infringe the '867 and '995 patents.

On February 6, 2012, plaintiff made its disclosure of asserted claims and infringement contentions pursuant to Patent Local Rule 3-1. The infringement contentions alleged *Mask* and *Diffusion* infringed at least claims 1, 4, 5, 8, 10, 11, 14, 16, 38, 40, 43, 45, and 47 of the '867 patent, and at least claims 23, 26, and 28–30 of the '995 patent. On February 17, defendant notified plaintiff of deficiencies in its infringement contentions and demanded withdrawal and supplementation thereof. Defendant also requested plaintiff agree to extend the due date for its invalidity contentions. Plaintiff vehemently rejected defendant's position and provided an explanation of its disclosures. Plaintiff also rejected defendant's request to delay its invalidity contentions. The parties then met and conferred but were unable to come to an agreement (Feerst Decl. ¶¶ 5–7; Exhs. A–C, E).

At issue is defendant's motion to compel infringement contentions that comply with Patent Local Rule 3-1. Defendant contends that plaintiff has failed to follow Rule 3-1 because the infringement contentions did not specifically identify each claim limitation in each accused product. According to defendant, plaintiff failed to disclose that the accused products: (1) "enhance photosynthesis by increasing carbon dioxide assimilation"; (2) "have a median particle size of below about three microns"; (3) use an "effective amount" of particulate material; (4) are "highly reflective"; and (5) include a "surfactant" (Br. 6–9). Defendant concurrently moves to extend the time to serve its invalidity contentions pursuant to Patent Local Rules 3-3 and 3-4. This order follows full briefing.

**ANALYSIS**

Rule 3-1 requires "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." PATENT L.R. 3-1(c).

The Patent Local Rules are designed "[to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." Rule 3-1 "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Bender v. Maxim Integrated Prods., Inc.*, No. 09-CV-01152, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (Illston, J.). To satisfy Rule 3-1, a "plaintiff [must] compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products . . . reverse engineering or its equivalent are required." *Network Caching Tech. LLC v. Novell, Inc*., No. 02-CV-012079, 2002 WL 32126128, at *3–4 (N. D. Cal. Aug. 13, 2002) (Walker, J.).

Plaintiff's Rule 3-1(c) chart failed to identify where each limitation of each asserted claim is found within *Mask* or *Diffusion*. Instead, for several of the asserted claims, plaintiff's chart simply stated that the accused products meet that limitation. To support these assertions, the chart repeatedly cited to the patent itself. The details now follow.

**1. PLAINTIFF'S DISCLOSURE DOES NOT IDENTIFY SPECIFICALLY WHERE EITHER *MASK* OR *DIFFUSION* "ENHANCE PHOTOSYNTHESIS BY INCREASING CARBON DIOXIDE ASSIMILATION."**

Claim 1 of the '867 patent discloses:

> A method for enhancing photosynthesis of a horticultural crop by increasing carbon dioxide assimilation of said horticultural crop which comprises applying to the surface of said horticultural crop an effective amount of one or more highly reflective particulate materials, said particulate materials being finely divided, and wherein the particles as applied allow for the exchange of gases on the surface of said crop and the finely divided particulate materials have a median individual particle size below about 3 microns.

(Feerst Decl. Exh. A at 9). To identify the second claim element, plaintiff's Rule 3-1(c) chart stated: "The Accused Products increase carbon dioxide assimilation of said horticultural crop. *See, e.g.*, the' 867 Patent at column 6, lines 27–30" (*id*. Exh. D at 4). The '867 patent at column 6 discussed Example 1 of embodiments of the invention. Example 1 involved the treatment of "Red Delicious" apple trees by applying certain commercially available chemical and water mixtures, including "treated calcium carbonate." Paragraph 6, lines 27–30, stated: "Increasing

3

1  values of photosynthesis and stomatal conductance represent increasing assimilation of carbon
2  dioxide from the atmosphere and transpiration of water from the leaf, respectively."
3  This statement, in the context of Example 1, was merely a conclusion based on the treatment
4  data collected during the testing of the invention, which did not involve application of the
5  accused *Mask* or *Diffusion* products. Plaintiff's Rule 3-1(c) chart thus failed to identify
6  specifically where in either product this limitation is met. To wit, the factual basis for plaintiff's
7  assertion that the products do, in fact, infringe claim 1 of the '867 patent was not disclosed.
8  Broad inferences cannot stand in place of factual information.

**2. PLAINTIFF'S DISCLOSURE DOES NOT IDENTIFY SPECIFICALLY WHERE EITHER *MASK* OR *DIFFUSION* "HAVE A MEDIAN PARTICLE SIZE OF BELOW ABOUT THREE MICRONS."**

Another element required by claim 1 of the '867 patent is that the "finely divided particulate materials have a median individual particle size below about 3 microns." For this element, plaintiff's Rule 3-1(c) chart stated:

> The Accused Products contain particulate materials having a median individual particle size below about 3 microns. See, *e.g.*, Exhibits 4–5 to the complaint (Dkt. No. 1) ('[The Accused Products are] flowable *micronized* dispersion[s] of calcium carbonate') (emphasis added). See also the '867 patent at column 3, lines 41–45.

(*id*. Exh. D at 6). In its opposition, plaintiff argues that "micronize" is defined by the Merriam-Webster dictionary as "pulverize into particles a few micrometers in diameter," and that defendant is seeking privileged work-product, namely the results of its testing prepared in anticipation of litigation. According to plaintiff, the purpose of the Rule 3-1 Disclosure stage "is to give fair notice rather than to litigate the ultimate merits of [it]s infringement contentions," and defendant should, "if it believes a claim element is not met, file a motion for summary judgment" (Opp. 10–11).

While plaintiff need not present actual evidence of infringement, a mere dictionary definition cannot here meet the Rule 3-1 standard of "reverse engineering or its equivalent." *See Network*, 2002 WL 32126128, at *3–4. The '867 claim language expressly requires that the *median* particle size be below about 3 microns. Nothing in the definition plaintiff now provides states that all micronized dispersions meet this limitation. While the parties inexplicably appear

4

to dispute the meaning of the word "median," there can be no doubt that some *specific amount* of particles in the products must be below about 3 microns to meet this claim limitation. Plaintiff thus failed to disclose the factual basis for its contention that this limitation is met by either of the accused products.

Plaintiff cites two decisions in support of its argument that test data is protected from disclosure under the attorney work-product doctrine. Neither of the cited decisions applies the relevant local rule and, in any case, neither of these decisions supports plaintiff's position. *First*, in *Tillotson Corp. v. Shijiazhaung Honray Plastic Products, Ltd.*, the district court in fact required disclosure of the test data at issue, stating:

> To the extent that the plaintiff relies on that test data to support its infringement claims, fairness dictates that the defendants have access to that information in order to defend the claims made against them . . . If the plaintiff declines to disclose the test results at this time, but later attempts to rely on that information, this court will not allow such evidence.

244 F.R.D. 683, 689 (N.D. Ga. 2007) (Vining, J.). Here, plaintiff will have the burden of proving that the accused products infringe its patents — given the nature of the patents-in-suit, undoubtedly some testing data will need to be presented. The data forming the basis of plaintiff's claims must fairly be disclosed in order for defendant to prepare its defense.

*Second*, in *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, the plaintiff relied upon its test data in making initial infringement disclosures, and the defendant later moved to compel discovery of that data based on waiver of the attorney-client privilege. No. 09-CV-1685, 2010 WL 4537002, at *1 (M.D. Pa. Nov. 3, 2010) (Carlson, Mag. J.). The district court held that the plaintiff's reliance on the data in its initial disclosures did not waive the attorney-client privilege because "preliminary infringement contentions provide notice of the accusing party's specific infringement theories, and are not considered evidence." Accordingly, *Kimberly-Clark* more likely supports the position that test data should be relied upon in making initial disclosures, as privilege may remain intact.

*Finally*, plaintiff argues that "if [defendant] believes that a particular claim element is not met, it can file a motion for summary judgment or partial summary adjudication on affected claims" (Opp. 10–11). Plaintiff confuses the requirement of disclosure with the requirement of

5

proof. To fulfill its Rule 3-1 obligation, plaintiff need not provide evidentiary support, *i.e.*, append a report of its allegedly privileged testing results. The *accuracy* of plaintiff's tests are not at issue at the initial disclosure stage. Plaintiff must, however, articulate the precise way in which it believes the products to be infringing. To the extent testing data are the basis for this belief, this order finds its disclosure is required under Rule 3-1.

### 3. PLAINTIFF'S DISCLOSURE DOES NOT IDENTIFY SPECIFICALLY WHERE EITHER *MASK* OR *DIFFUSION* USE AN "EFFECTIVE AMOUNT OF ONE OR MORE HIGHLY REFLECTIVE PARTICULATE MATERIALS."

Claim 1 of the '867 patent also requires the application of "an effective amount of one or more highly reflective particulate materials." For this element, plaintiff's Rule 3-1(c) chart stated:

> The recommended usage for the Accused Products is an effective amount. See, *e.g.*, Exhibits 4-5 to the complaint. In addition, the Accused Products contain highly reflective particulate materials. (Dkt. No. 1) ('[The accused products] form [] a mineral-based particle film intended for protection of agricultural crops, plants in nurseries and greenhouses. When [the Accused Products are] applied to plants, a dry white film results.') See also Exhibit 6 to the complaint (Dkt. No. 1) (stating that the Accused Products reflect light).

Defendant argues that plaintiff did not specifically identify what portion of the accused products' labels disclose application of an "effective amount," nor did plaintiff disclose "what an effective amount is." This order partially agrees.

While plaintiff need not expressly construe the terms of Claim 1, it must disclose with greater specificity where it believes the accused products meet the "effective amount" limitation. A general citation to the products' labels, without more, cannot suffice. As determined above, plaintiff is required to put defendant on notice of the specific allegations of infringement — what basis plaintiff has for its belief that the products meet each limitation. Even assuming the truth of all assertions in the infringement contentions, plaintiff has failed to identify the basis for its contention that the accused products contain an "effective amount of one or more highly reflective materials."

Plaintiff cites to its letter dated February 27 in which it sought to supplement its infringement contentions with a more specific reference to the label, identifying where the

6

products claim to be "recommended for use as a protectant against sunburn and heat stress" as well as the products' directions for use (Opp. 12). While this order agrees with plaintiff that under certain circumstances marketing and packaging materials may suffice to identify the presence of claim elements, this is not such a circumstance. Piecing together portions of these materials to support broad assertions does not meet the Rule 3-1 requirement.

Plaintiff cites *Q-Pharma, Inc. v. Andrew Jergens Corp.* for the proposition that marketing materials are sufficient under Rule 3-1. 360 F.3d 1295 (Fed. Cir. 2004). *Q-Pharma* did not construe the Rule 3-1 disclosure requirements but rather determined that Rule 11 sanctions were not required where a plaintiff based its pre-filing infringement analysis on the "forthright" labeling of the defendant's product. While defendant apparently threatened to file such a motion, Rule 11 sanctions are not presently sought and the diligence of plaintiff's pre-filing inquiry is not here challenged. The *Q-Pharma* court specifically distinguished the Rule 11 inquiry, stating "in any event, a claim chart is not a requirement of a pre-filing infringement analysis." *Id.* at 1301. *Q-Pharma* thus did not conclude that general citation to a product's packaging adequately discloses the theory of plaintiff's infringement claims.

### 4. ADDITIONAL DEFICIENCIES IN PLAINTIFF'S DISCLOSURE.

Defendant also argues that plaintiff failed to specify where the accused products are "highly reflective" as claimed by the '867 patent, or contain a "surfactant" as claimed by the '995 patent. Because this order has already found plaintiff's infringement contentions to be deficient, it need not address these additional arguments. Plaintiff must supplement its disclosures to conform with the standard identified in this order as to all claim elements. While plaintiff need not undertake claim construction at this stage, the basis for its contentions must be revealed with adequate specificity under the standard identified above.

Finally, plaintiff argues that defendant "cannot credibly argue that it lacks fair notice of the alleged infringement beyond the claim language." This argument echoes nearly verbatim defendant's argument in opposition to plaintiff's recent motion to dismiss and/or strike its counterclaims. That argument was rejected then and must be rejected now (Dkt. No. 66). Rule 3-1 provides a standard for disclosure, which the Court is bound to uphold irrespective

7

of the parties' actual knowledge. Our parties seem intent on holding one another to the letter of the applicable standards. They are entitled to so do, if they so choose. This order points out, however, that unnecessary motion practice is both inefficient and highly disfavored.

Because this order finds plaintiff's infringement contentions insufficient, defendant's motion to compel infringement contentions that comply with Rule 3-1 is **GRANTED.**

### 5. DEFENDANT'S MOTION TO EXTEND TIME TO SERVE INVALIDITY CONTENTIONS.

Defendant concurrently moves to extend the time to serve its invalidity contentions. Under Patent Local Rule 3-3, an opposing party must serve its invalidity contentions within 45 days following service of plaintiff's infringement contentions. Plaintiff served its infringement contentions on February 6, 2012 (Feerst Decl. Exh. A). Accordingly, the deadline for defendant to serve its invalidity contentions was March 22, 2012. Defendant argues that it should not be required to produce invalidity contentions and confidential technical documents until plaintiff has complied with its Rule 3-1 disclosure obligations. Courts in this district have extended or stayed discovery obligations "in light of deficient infringement contentions." *See Implicit Networks Inc. v. Hewlett-Packard Co.*, No. 10-CV-03746 SI, 2011 WL 3954809, at *4 (N.D. Cal. Sept. 7, 2011) (Illston, J.). Having found plaintiff's infringement contentions lacking, this order agrees that the deadline for defendant's invalidity contentions should be extended.

Contrary to plaintiff's assertion, defendant does not ask for an indefinite extension to file its invalidity contentions. Defendant specifically seeks extension until thirty days following the service of plaintiff's amended infringement contentions (Br. 5; Opp. 3). This request, however, asks for too much. Defendant has had ample time to prepare its invalidity contentions, which do not depend for their substance on plaintiff's infringement contentions. Accordingly, defendant's motion to extend the time to serve its invalidity contentions is **GRANTED IN PART.** Defendant must serve its invalidity contentions within **FOURTEEN DAYS** following the service of plaintiff's amended infringement contentions.

8

**CONCLUSION**

For the foregoing reasons, defendant's motion to compel infringement contentions that comply with Patent Local Rule 3-1 is **GRANTED.** Defendant's motion to extend time to serve invalidity contentions is **GRANTED IN PART.** The hearing scheduled for April 19, 2012, is hereby **VACATED.** Plaintiff must serve an amended disclosure of claims and infringement contentions consistent with the foregoing within **TWENTY-ONE CALENDAR DAYS** from the date of this order. Defendant must serve its invalidity contentions within **FOURTEEN CALENDAR DAYS** thereafter.

In addition, in light of the above, the briefing schedule leading up to the claim construction hearing (Dkt. No. 45) is hereby **VACATED.** The claim construction tutorial shall now be held on **JULY 18, 2012.** The claim construction hearing shall now be held on **AUGUST 8, 2012.** The parties are directed to meet and confer and jointly submit a proposed order establishing a new briefing schedule leading up to these dates.

**IT IS SO ORDERED.**

Dated: April 13, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9